# ELIZABETH STOEPLER et al., Plaintiffs in Error, v. MORITZ SILBERBERG et al.

### Division Two, May 18, 1909.

1. **WARRANTY DEED: After-Acquired Title: Restrictions.** A deed containing the words "grant, bargain and sell" and a further covenant of general warranty, ordinarily conveys the after-acquired title of the grantor; but where it further recites that it is to embrace all the interest devised to grantor by his father and such interest as grantor inherited from his deceased brother and sisters, it does not convey his after-acquired interest inherited from his mother.

2. ———: ———: **Remainderman: Death of Life Tenant.** But where the will devised the land to testator's widow for life and a vested remainder in fee simple to his four (named) children and all of them died except one, the entire fee simple title vested in the surviving child, and a general warranty deed by him during the life of the widow vested the title in the grantee, subject to her life estate, and at her death the entire title went to said grantee.

3. ———: **Homestead: No Specific Finding: Appellate Practice.** Where neither party at the trial requested a finding of facts or declarations of law and the finding was general, the judgment, which is adverse to the assertion of homestead by the widow's heirs, will be affirmed unless the court can say that, upon the evidence, the judgment is manifestly so erroneous that it cannot be sustained upon any theory.

4. ———: ———: **Less Than Devise.** Where the husband's will gives to his widow property greater in quantity or value than she could hold as a homestead, and she accepts the same, she cannot insist upon her homestead right, if it is repugnant to the terms of the will.

5. ———: ———: **No Election.** Where no steps were taken by the widow to have the homestead admeasured to her upon the death of her husband in 1867, and she never asserted homestead in the premises, but caused the will, which gave her a life estate, to be probated and accepted appointment as executrix thereunder, and continually asserted that she had a life estate only, and the value of the life estate given her exceeded in value her homestead right, and the property itself largely exceeded the statutory value of a homestead, it will not be held that she took a homestead under the statute, which upon her death descended to her heirs.

Error to St. Charles Circuit Court.—*Hon. Jas. D. Barnett*, Judge.

AFFIRMED.

*T. F. McDearmon.* and *Brownrigg, O'Brien & Mason* for plaintiffs in error.

(1) In order that a deed may operate to convey an after-acquired title by inurement, it must purport to convey an indefeasible estate in fee simple absolute. Bogy v. Shoab, 13 Mo. 380; Valle v. Clemens, 18 Mo. 486; Rector v. Waugh, 17 Mo. 27; Gibson v. Chouteau,. 39 Mo. 566; Brawford v. Wolfe, 103 Mo. 391; Ford v. Unity Church Society, 120 Mo. 508; Wilson v. Fisher, 172 Mo. 10; Devlin on Deeds (2 Ed.), sec. 947.   (2) A deed, the granting part of which conveys an estate less than a fee, will not be enlarged into a fee on account of the fact that it contains a clause of general warranty. Rector v. Waugh, 17 Mo. 27; Davidson v. Manson, 146 Mo. 608; Pelletreau v. Jackson, 11 Wend. 110; Hamrick v. Patrick, 119 U. S. 175; Adams v. Ross, 30 N. J. L. 509; Wright v. Shaw, 5 Cush. 56; Trull v. Eastman, 3 Met. 123; 2 Coke, Lit. 385 b. (g); Rawle on Covenants of Title (3 Ed.), 393; 3 Washburn on Real Property (6 Ed.), sec. 1934; Devlin on Deeds (2 Ed.), secs. 931, 950.

*C. & C. J. Daudt* and *L. H. Breker* for defendants in error.

(1) Under the Homestead Act of 1865 a homestead could only be claimed in land acquired by deed. Schindler v. Givens, 63 Mo. 394; Lincoln v. Rowe, 64 Mo. 138; O'Shea v. Payne, 81 Mo. 518; Loring v. Groomer, 142 Mo. 2; Spratt v. Early, 169 Mo. 369; Clark v. Thias, 173 Mo. 628; Thompson on Homestead, sec. 231.   (2) The devise to Louise Stoepler under the will of her husband, Bernard Stoepler, was greater in

value than the estate she could have taken in the property in suit under the homestead law. (a) She was, therefore, put to her election, as to whether she would take under the will or under the homestead law. She did elect to take the devise under the will and hence was barred of the homestead. Daudt v. Musick, 9 Mo. App. 174; Davidson v. Davis, 86 Mo. 440; Kaes v. Gross, 92 Mo. 648; Burgess v. Bowles, 99 Mo. 544; Schorr v. Etling, 124 Mo. 42; Ball v. Ball, 165 Mo. 312. (b) The right of the widow to make an election was personal to her and not transmissible by descent to her heirs or legal representatives, and plaintiffs as her representatives claiming as heirs of Frederick Stoepler, who was her sole surviving heir, cannot withdraw her acceptance of the provisions made for her by her husband's will and now claim a homestead. Welch v. Anderson, 28 Mo. 299; Davidson v. Davis, 86 Mo. 444; Schorr v. Etling, 124 Mo. 47; Ball v. Ball, 165 Mo. 326. (3) The deed from Frederick Stoepler to Moritz Silberberg was a general warranty deed, and by its recitals of ownership and covenants of seizin and warranty Frederick Stoepler was, and now plaintiff as his heirs are, estopped to deny his ownership of the property at the time of the execution of the deed and any title descending to him from his mother after its execution immediately inured and passed to defendant Silberberg. Bogy v. Shoab, 13 Mo. 372; Gibson v. Chouteau, 39 Mo. 568; Lajoye v. Primm, 3 Mo. 538; Clamorgan v. Greene, 32 Mo. 285; Tyler v. Hall, 106 Mo. 319; 11 Am. and Eng. Ency. Law (2 Ed.), 400; 24 Ib. 57, 62. (4) The cause having been tried before the court without instructions, the appellate court cannot tell on what theory the cause was tried in the circuit court, and will not weigh the evidence and review the finding below, but must presume the trial court made a proper application of the law to the facts. Weilandy v. Lemuel, 47 Mo. 322; Miller v. Breneke, 83 Mo. 163; Altum v. Arnold, 27 Mo. 264; Conran v. Sellew, 28 Mo.

320; Easley v. Elliot, 43 Mo. 289; Wilson v. Railroad, 46 Mo. 36; Harrison v. Bartlett, 51 Mo. 170; Cunningham v. Snow, 82 Mo. 587; Riffe v. Railroad, 72 Mo. App. 222; Rice, Stix & Co. v. Harper, 74 Mo. App. 383; Bray v. Kremp, 113 Mo. 552; Mauch v. Hornback, 109 Mo. App. 624; Clyburn v. McLaughlin, 106 Mo. 521; Sieferer v. St. Louis, 141 Mo. 586; Gardner v. Robertson, 208 Mo. 612; Martin v. Trail, 142 Mo. 100.

GANTT, P. J.—This is a writ of error to reverse a judgment of the circuit court of St. Charles county, in an action of ejectment brought by the plaintiffs as the widow and heirs at law of Frederick Stoepler, deceased, against defendants, for real estate in the city of St. Charles, described as ''Block 177 of the said city, fronting seventy-five feet more or less on Morgan street and extending back northwardly the same width to the center of the square, and bounded on the north by the lot of Henry Vossick, on the east by Five and a Half street, south by Morgan street and west by the lot of Adolph Kohlmeier; and is part of what is know as Pallardy's Addition to the City of St. Charles, of Boon Ten of the St. Charles Commons.''

Ouster was laid as of January 7, 1903. The petition was in the statutory form and damages alleged to be $5,000, and monthly rents and profits eighty dollars.

The defendants Bye Turner and John Hickey filed separate answers, denying generally all the allegations of the petition and each for himself alleging his possession of a part of said premises and denying possession of the other portion thereof.

The defendant Moritz Silberberg, for his separate answer, denied each and every allegation of the petition and then alleged that he was not in the actual possession of the whole or any part of the premises, but that he had rented the same to the defendants, John Hickey and Bye Turner; the east half of said premises to the said Hickey, and the west half to the said Bye

Turner. At the commencement of this suit, the said parties were in the actual possession each of the part rented to him. For further answer the defendant Silberberg states that on the —— day of ———, 1866, one Bernard Stoepler, under whom defendant as well as plaintiffs claim title to the real estate described in the petition, died the owner in fee of said real estate. That said Bernard Stoepler left a last will which was duly probated in the probate court of St. Charles county on the 14th of November, 1867, in and by which in said last will he devised said real estate to his widow Louise Stoepler, for and during her natural life and the remainder after her death to his children, August, Louise, Frederick and Mary. That on or about the 19th day of December, 1883, this defendant, while residing in St. Louis, was engaged in the grocery business and owned a valuable stock of groceries and merchandise of the value of twenty-four hundred dollars; that at said last-mentioned date, Frederick Stoepler, one of the children of Bernard Stoepler, deceased, and said widow, Louise, whom this defendant had prior to that date married, represented to this defendant that he the said Frederick Stoepler had acquired all the right, title and interest of his aforementioned brothers and sisters, and that he was the owner in fee of said real estate subject only to the life estate of the said widow, Louise, devised to her by the last will of her deceased husband. Said Frederick Stoepler and said widow Louise requested this defendant to exchange his said grocery business and stock of merchandise in St. Louis for said real estate; that relying upon said representation of the said Frederick Stoepler and the said widow, Louise, and believing that the said Frederick Stoepler was the owner of said real estate, subject only to the life estate of the said widow Louise, defendant consented to make the exchange so requested, and sold and delivered said grocery business and merchandise to the said Frederick, and in considera-

tion thereof said Frederick made, executed and delivered to this defendant his deed conveying the said real estate in the petition described. That said Louise died on the 13th day of February, 1894, and said Frederick Stoepler died subsequently thereto. That plaintiffs claim title to said real estate by descent of said widow Louise, and as heirs of said Frederick. Defendant states that by reason of the representations of the said Frederick and the said Louise, the plaintiffs as their heirs are estopped from asserting any claim in said real estate, and from denying that the fee simple title to the same was owned by and vested in said Frederick at the time of his conveyance to this defendant. Defendant further alleged that after the conveyance to him of this land, he entered into and has ever since been in open, absolute, adverse possession of the same, and has made lasting and valuable improvements thereon, and paid out large sums of money for repairs and insurance and taxes, to the amount of three thousand dollars, all with the knowledge and consent of the said Frederick and the said widow Louise and their heirs, who stood by while defendant was making said improvements and repairs and laying out said sums of money, without in any way disclosing to this defendant, his, her or their claim to said real estate.

For further answer defendant stated that the said Frederick by his deed covenanted for himself and his heirs, to and with this defendant, his heirs and assigns to warrant and defend the title of said real estate to this defendant against the claim of every person whomsoever, and that he the said Frederick Stoepler at the time of the execution of said deed was seized of an indefeasible title in fee simple in said real estate; that said real estate was free from any incumbrance done or suffered by him or any person under whom he claimed and that he and his heirs would make every assurance of said real estate to defendant, his heirs

and assigns. And defendant avers that the plaintiffs are the heirs of said Frederick, they as such heirs have not kept and performed the covenant of their said ancestor, but on the contrary have brought this suit to eject this defendant and his tenants from said premises. Defendant avers that said Frederick Stoepler died insolvent leaving no estate whatsoever and that plaintiffs are utterly insolvent.

In their reply the plaintiffs admitted that John Hickey and Bye Turner, at the time of the commencement of this suit, were in possession of parts of the premises as set forth in plaintiffs' petition and denied all the other new matter alleged in said second defence. And for reply to the third defence, plaintiffs admitted that in 1866 Bernard Stoepler, under whom plaintiffs as well as the defendants claim title to the said real estate, died the owner in fee of the said real estate, and that Louise Stoepler died on the 12th day of February, 1894, and that Frederick Stoepler died subsequently thereto, and that plaintiffs claim title by descent from and as heirs of said Frederick Stoepler. Plaintiffs denied each and every other allegation of new matter in said third defence. And to the fourth defence plaintiffs admitted that they had brought this suit to evict defendant and his tenants, but denied each and every other allegation therein contained.

The case was tried to the court without a jury at the March term, 1905, and resulted in a judgment in favor of the defendants without considering the two cross-bills in defendant Silberberg's answer. In due time plaintiffs filed their motions for new trial, which were overruled by the court and exceptions duly saved and from the judgment plaintiffs have appealed in proper form to this court.

Bernard Stoepler, who died in the year 1867, was seized in fee of the property in controversy and both the plaintiffs and the defendant Moritz Silberberg claim title under said Bernard, and the other defend-

ants are merely the tenants of said Silberberg. Bernard Stoepler left him surviving at the date of his death in 1867 his widow, Louise Stoepler, and the following children, Louise, Frederick and Mary. All of these children with the exception of Frederick died without issue, prior to December 10, 1883. On December 19th, 1883, Frederick conveyed his interest in this property to the defendant Silberberg, who had prior to that date married Frederick's mother, Louise Stoepler. Mrs. Louise Stoepler Silberberg died February 12, 1894, leaving Frederick Stoepler as her sole heir at law. The plaintiffs are the widow and children of the said Frederick who died in January, 1903. The deed from Frederick Stoepler to defendant Silberberg is in these words:

"Know all men by these presents, that I, Frederick Stoepler, of the City of St. Louis, in the State of Missouri, have this day, for and in consideration of the sum of twenty-four hundred ($2,400) dollars, in hand paid by Moritz Silberberg of the county of St. Charles in the State of Missouri, granted, bargained and sold, and by these presents do grant, bargain and sell, unto the said Moritz Silberberg and to his heirs and assigns forever the following described tract or parcel of land situate in the county of St. Charles, in the State of Missouri: That is to say, all such right, title and interest that I have in and to a house and lot in block No. 177 of the city of St. Charles, Missouri, fronting seventy-five feet more or less on Morgan street and extends back northwardly the same width to the center of the square; said lot is bounded on the north by lot of Henry Vossick, on the east by Five and a Half street, south by Morgan street and west by lot of Adolf Kohlmeier. And is a part of what is known as Pallardy's Addition to the city of St. Charles of Boon Ten of the St. Charles Commons. This deed is to embrace all the interest in the aforesaid real estate that I inherited from my father, Bernard Stoepler,

deceased, and devised to me in his last will and testament and also such interest that I inherited from my sisters, Mrs. Zurmuehlen, deceased, and Mary Stoepler, deceased, and also my brother, August Stoepler, deceased.

"To have and to hold the premises hereby conveyed, with all the rights, privileges and appurtenances thereto belonging, or in anywise appertaining unto the said Moritz Silberberg, and to his heirs and assigns forever; the said Frederick Stoepler hereby covenanting to and with the said Moritz Silberberg, his heirs and assigns for himself, his heirs, executors and administrators, to warrant and defend the title to the premises hereby conveyed against the claim of every person whatsoever.

"*In witness whereof*, I have hereto subscribed my name and affixed my seal this nineteenth day of December, 1883.

"FREDERICK STOEPLER,    (Seal.)"

Which deed was duly acknowledged by the said Frederick and recorded January 5, 1884.

I.   If the plaintiffs are estopped by the general warranty contained in Frederick Stoepler's deed to defendant Silberberg in 1883, it will be unnecessary to pass upon the other contentions of the defendant. It is insisted by the defendant Silberberg that this deed was a general warranty deed and that plaintiffs as the heirs of said Frederick are estopped to deny his ownership of the property at the time of the execution of the said deed and that any title which descended to him from his mother after its execution immediately inured and passed to the defendant Silberberg by operation of law. Whereas plaintiffs assert that inasmuch as the deed only purported to grant, bargain and sell "the right, title and interest" of the said Frederick in and to said real estate, which the said Frederick had in said prop-

erty, and contains the further recital that the deed was to "embrace all the interest in the aforesaid real estate that he had inherited from his father Bernard Stoepler, deceased, and devised to him in the last will and testament of his father, and such as he had inherited from his sisters and brother," the said deed only amounted to a quitclaim and the after-acquired interest in said lot as the heir of the mother did not pass by way of estoppel, and that the general covenant of warranty contained in the deed did not enlarge the estate granted by the terms of the deed, but will be confined to the interest which Frederick had at the time of its execution. It will be observed that the deed contains the statutory words, "grant, bargain and sell," which by virtue of the statute have the force and effect of covenants, that the grantor, Frederick Stoepler, was, at the date of the deed, seized of an indefeasible estate in fee simple in the premises conveyed; that the same was then free from incumbrance done or suffered by the grantor, his heirs and assigns and all claiming under him; and also for further assurance thereof to be made by the grantor, his heirs and assigns, and in addition there is a covenant of general warranty. Had the deed purported to convey the lot in controversy, there could exist no doubt that the plaintiffs would be estopped to claim the after-acquired title, if any, which the said Frederick obtained to said lot as heir of his mother, Louise Stoepler Silberberg, but while these covenants are expressed in the deed, the instrument must be read and construed in the light of all its parts and when this is done, it is obvious that it does not attempt or purport to convey and warrant the lot itself, but only, "all such right, title and interest," that Frederick Stoepler, at the date of the deed, had in and to said house and lot in block 177 and such interest therein as he had inherited from his father and devised to him by the will of his father and such as he had inherited from his sisters and brother, and having re-

stricted his covenants to the interest and title thus ob-
tained, it would seem plain that the covenants cannot
be extended to estop his heirs as to an after-acquired
title, which he might have inherited from his mother.

So that it is essential to determine what title
Frederick Stoepler had in and to said lot when he made
the deed December, 1883, to defendant Moritz Silber-
berg. If we were to look alone to the last will and tes-
tament of Bernard Stoepler, the common source of
title, it is obvious that Frederick took a fee simple in
remainder subject to the life estate of his mother, and
to an undivided one-fourth of said lot at the death
of his father, and that by the terms of the will, owing
to the death of the other three children prior to the
death of their mother, and prior to the making of his
deed to Silberberg, he had become entitled to the whole
lot in fee simple, subject to his mother's life estate in
said lot, and accordingly upon the death of Mrs.
Louise Stoepler Silberberg his grantee, Silberberg,
was entitled to the said lot and plaintiffs were estopped
by the said deed and the covenants of their father
Frederick.

But plaintiffs base their right of recovery upon
the assertion that Bernard Stoepler, their grandfather,
had no devisable estate in said lot as to his wife and
widow Louise Stoepler; that said lot was the home-
stead of said Bernard at the date of his death in 1867,
and by the homestead statute then in force (General
Statutes 1865, ch. 111, pp. 449 to 451, inclusive), the
fee simple title to said homestead "passed to and vest-
ed in his widow, the said Louise, and his minor chil-
dren, the said children having an interest therein only
until they should attain their majority, and that upon
the death of said Louise Stoepler Silberberg, the title
descended to Frederick Stoepler, the father and hus-
band of plaintiffs, as the sole heir at law of said Louise
Stoepler Silberberg, and not as devisee of his father,
Bernard Stoepler, and that upon the death of Frederick

in 1903, the title descended to plaintiffs as his widow and heirs at law.''

This claim necessarily required a resort to evidence to establish facts *in pais,* which would determine this homestead right. Accordingly plaintiffs offered testimony tending to show that prior to and at the date of the death of Bernard Stoepler, he and his wife Louise and their children were occupying this property as their homestead and it may be said this fact is conceded by defendant. Plaintiff then sought to show that said lot did not exceed in dimensions the amount of real estate which the statute allowed as a homestead and this also is practically admitted. Plaintiffs then introduced witnesses to show that said lot did not exceed in value at the date of the death of Bernard Stoepler, the homestead which the statute permitted. On this point the defendants offered testimony which tended strongly to show that said lot exceeded in value fifteen hundred dollars. It is agreed that no steps were ever taken to have a homestead admeasured and set off to said Louise, the widow, and the testimony showed that she never asserted a claim of homestead therein, but on the contrary, she caused the will of Bernard Stoepler, which devised to her a life estate in the whole of said lot, to be probated, and accepted the appointment of herself as executrix thereof and duly qualified as such, and always asserted she had a life estate only in said lot. Neither party requested the court to make a specific finding of the facts, nor were any declarations of law requested of the court, and as already said the finding was for the defendants. In this state of the record, unless this court can say that, upon the evidence, the judgment of the circuit court is so manifestly erroneous that it cannot be sustained upon any theory, the judgment must be affirmed. A vital proposition presented by this record is whether Mrs. Louise Stoepler, the widow of Bernard Stoepler, elected to take the provision made for her in the will

of her husband, to-wit, a life estate only in said property, and waived her homestead in fee therein. This question has been presented to this court in its previous decisions, and from them we deduce the following conclusions:

If the homestead did not exceed in value or dimensions that which the law gave the widow, there was no occasion to have the same admeasured and set off to her, as the statute of 1865 only required these steps to be taken when necessary. [Vogler v. Montgomery, 54 Mo. 577; Rogers v. Marsh, 73 Mo. l. c. 69; Bank of Versailles v. Guthrey, 127 Mo. 192; Burgess v. Bowles, 99 Mo. l. c. 548.]

On the other hand, where the husband devises property to his wife or widow greater in amount than that to which she would be entitled by law, as his widow, and she accepts the same, she cannot insist upon her homestead right, if it is repugnant to the terms of the will. [Davidson v. Davis, 86 Mo. 440.]

If there was no property on which the will would operate as against a widow's absolute statutory rights, there would be no consideration for an election by her and the reason on which the doctrine of election rests, would fail. No formal renunciation of the will would be necessary in such case to confirm her title to the property which the law itself gave her. [Hasenritter v. Hasenritter, 77 Mo. 162.]

In Davidson v. Davis, 86 Mo. l. c. 444, it was held: "She could not take the devise and bequest under the will, and, at the same time, insist upon her homestead right. The right under the will, and that confirmed by the homestead law, were repugnant to each other, and she had to repudiate the one or the other. There is no provision in the homestead law prescribing a formal election or repudiation, similar to those to be found in the law concerning dower and jointure; but, after the death of her husband, the widow is *sui juris,* and her conduct in relation to her property is treated pre-

cisely as that of any other person.  .  .  .  .  The law gave her the homestead, but she had a perfect right to dispose of it.  If, by his will, her husband gave her a different estate in the land from that which the law gave her, she had a perfect right to accept it in lieu of the homestead.  No time is specified within which she should make her election, and she could make it immediately.  Nor is any particular manner of making the election prescribed.  Accepting the bequest under the will, qualifying and acting as executrix of the will, and repeatedly expressing her satisfaction with its provisions in her behalf, are sufficient to prove her acceptance of these provisions, certainly against her heirs.''

While it was said in Kaes v. Gross, 92 Mo. 1. c. 659, that the decision in Davidson v. Davis, 86 Mo. 440, to the effect that the husband could put his widow to her election, should not longer be followed, still when this same question again arose in Burgess v. Bowles, 99 Mo. 543, Davidson v. Davis was reaffirmed and it was pointed out that Kaes v. Gross arose under the act of 1875, whereas Davidson v. Davis arose under the law prior to the amendment of 1875, as does the case now in hand.

Applying the principles announced in Davidson v. Davis and Burgess v. Bowles, supra, it will be seen that in many respects the facts of this case are very similar.  In this case the widow accepted the provision of the will, qualified as executrix and on various occasions announced she only had a life estate in this lot.  Her heirs could not now withdraw her acceptance. The right of election is not transmissible by descent. [Welch v. Anderson, 28 Mo. 1. c. 298; Davidson v. Davis, 86 Mo. 1. c. 444.]

The evidence was conflicting as to the value of this lot in 1867, when Bernard Stoepler made his will and died.  Under the Homestead Act the homestead could not exceed $1,500 in value.  The testimony on behalf of

plaintiff tended to show the lot by the front foot was $8.50 or $9. We think it is fair to interpret this evidence as the value of the lot exclusive of the house. The lot was ninety-eight and one-half feet front by one hundred and fifty feet deep. On the part of the defendants the testimony tended to prove the house was an eight room brick house. One half of it was erected by Bernard Stoepler a year or two before he died in 1867. Two contractors who had lived in St. Charles prior to 1867 and knew the cost of the building testified to the price of brick, plastering, joists, lumber and painting, and another builder who had measured the house and examined it testified on the basis of the costs of building in 1867 that it would cost over $1,892, and thus at a moderate estimate the property was worth $3,000. If the circuit court so found, it is evident that the property exceeded by $1,500 the amount the widow could have claimed. We do not know upon what basis the court estimated the value of the life estate devised by the will to the widow but if he adopted the Northampton tables, it would have been $1,864, or an excess of $364 over the value of the homestead. Neither party offered evidence as to the amount of the personal estate which the widow received. But applying the rules announced in Davidson v. Davis, and Burgess v. Bowles, supra, it is evident that, if the court believed the testimony of the contractors, and there is nothing to impeach them, the property largely exceeded the value of a homestead, and the life estate therein devised to her exceeded in value her homestead right, and the evidence tended to show that she accepted the provisions made for her by the will, and she was not entitled to insist on her homestead right, a right clearly repugnant to the terms of the will. Obviously Bernard Stoepler intended she should take a life estate in the whole lot, with remainder in fee to his four children. He could not have intended she should take the lot in fee as her homestead, and all

his other property, and thus nullify the provisions made for his children. We think the testimony tended strongly to show that Mrs. Stoepler fully acquiesced in the will and never made any claim of homestead in her lifetime but elected to abide by the will, as she had a right to do.

That Silberberg so understood her relation to this lot we think is fairly deducible from the facts and circumstances in evidence. It is incredible that he would have given his stock of groceries in St. Louis to the amount of $2,400 for a worthless slip of paper, or that his own wife desired him to do so, and yet such was the case, if we are to adjudge that his wife at that date was the owner of the fee in the whole lot. The evidence to the contrary was that she continually asserted she had *a life estate only;* that she caused the will to be probated and qualified as executrix thereof; that she urged her friend to get her husband, Silberberg, to trade his store in St. Louis for the lot, subject to her life estate. If the circuit court took this view of the evidence, its judgment had ample basis. The remark of Judge BAKEWELL in Daudt v. Musick, 9 Mo. App. l. c. 175, a decision, by the way, in every way in harmony with Davidson v. Davis, and Burgess v. Bowles, supra, that it would be unjust to subsequent purchasers who have notice of the will and no notice of any renunciation of its provisions to defeat their titles by a claim of homestead when there has been acquiescence on the part of the widow in a testamentary provision of the husband inconsistent with the claim of homestead, is appropriate here.

In our opinion the judgment was for the right party and there is no reversible error in the record.

The judgment is affirmed.

*Burgess* and *Fox, JJ.,* concur.