## KELLY v. SOUTHWORTH

(No. 1458; June 4, 1928; 267 Pac. 691)

*Reid & More,* for appellant.

*Donzelman & Piggott,* for appellee.

RINER, Justice.

This case is before the court on direct appeal from a judgment of the District Court of Goshen County, Wyoming. As the parties are aligned in this court as they were in the court below, they will be referred to respectively as plaintiff and defendant.

Plaintiff's amended petition sets out, in substance, that he is the owner and entitled to the immediate possession

of certain described real property in Goshen County, Wyoming; that the defendant has held the possession of this property for some time past and is at present wrongfully withholding possession thereof from the plaintiff, notwithstanding that a demand therefor has been made upon him. Judgment is asked that plaintiff be given possession of the property. Defendant's answer denies plaintiff's alleged ownership of the property in dispute, admits that he has been and is now in possession of it and denies that he is wrongfully withholding the same from plaintiff. As a second defense, in the answer it is alleged that defendant is the owner of the property above mentioned at the time of the commencement of the action, by reason of a deed issued to him by the Treasurer of Goshen County, Wyoming. The relief he asks is that plaintiff's petition be dismissed and defendant's title in the property be quieted as against the plaintiff. Plaintiff replied by a denial of all the allegations in the answer contained except such as were admitted by his amended petition to be true, and further that any interest defendant acquired by reason of the Treasurer's deed referred to in his answer inured to the benefit of the plaintiff by reason of a previous conveyance made by defendant to one Perry conveying any present or future interest which defendant might have or afterwards obtain to the land, plaintiff being Perry's grantee.

The case was tried to the court upon an agreed statement of facts, from which it appears that the plaintiff is the Receiver of the First National Bank of Torrington —having been duly appointed as such upon the insolvency of that institution; that defendant has been for some time in possession of a described quarter section of land in Goshen County, Wyoming, and still holds the possession and occupancy thereof; that plaintiff, before commencing this action, made due demand upon the defendant for possession of the property, which demand was refused;

that "on the 2nd day of February, 1921, the defendant executed and delivered to Eben P. Perry a quit claim deed conveying and quitclaiming to the said Eben P. Perry all his then present interest as well as any interest thereafter acquired, either by purchase or descent in the real estate above described, which said deed was witnessed and acknowledged as required by law, and recorded in the office of the County Clerk of Goshen County, Wyoming, on the 4th day of April, 1921 at 3:00 o'clock in the afternoon in Book 35 of Deeds at Page 549 thereof. The said John Southworth at the time of making said deed, held no title of record to said property. His interests, if any, being one of expectancy through his grandfather or his father;" that Perry was Cashier of the First National Bank of Torrington at the time the deed was made and took the conveyance in trust for the use and benefit of that bank, and thereafter, by quit claim, conveyed "all of his interest, present and future" to the plaintiff by conveyance duly placed of record—the deed being dated September 4, 1926; that the property aforesaid was sold for taxes by the County Treasurer of Goshen County on July 14, 1924, to the Goshen Irrigation District, whose rights thereunder, through an intermediate assignee, were acquired by the defendant, who, in due course and by the proceedings required by law, obtained from the County Treasurer of Goshen County, Wyoming, a Treasurer's deed for the described property, said deed being of date April 26, 1926, and being in all respects "regular and regularly issued" and vesting in the defendant title to the premises involved subject only to the rights, if any, of plaintiff, under the facts above outlined.

With the case before it in the situation we have thus described, the court below gave judgment for the defendant, directing that plaintiff take nothing by his action and declaring the quit claim deed from defendant to Perry of no force and effect, as against the former.

418

The only question in the case and the only question discussed by counsel is the effect to be given the quit claim deed under date of February 2, 1921, from the defendant to Eben P. Perry, upon the after-acquired title which defendant obtained through the tax sale proceedings and Treasurer's deed issued to him pursuant thereto on April 26, 1926. Plaintiff contends that as the agreed facts show that the quit claim deed aforesaid conveyed to Perry all defendant's "present interest, as well as any interest thereafter acquired either by purchase or descent" in the property in controversy, the use of the words "by purchase" indicates an intention of the parties to the conveyance to include any after-acquired title, even though obtained by defendant more than five years afterwards through the medium of tax-sale proceedings and from other parties not in any way connected with the title at the time the quit claim deed was given.

It is true that the word "purchase" in its technical and broader meaning relative to land, is generally held to mean the acquisition of real estate by any means whatever except by descent. Shulthis v. McDougal, 162 Fed. 331, 338; Farrington v. Wilson, 29 Wisc. 383; Jones v. Monogue, 29 Ark. 637.

Referring to the agreed statement of facts, we find that while defendant's quit claim to Perry in 1921 conveyed the former's "present interest, as well as any interest thereafter acquired either by purchase or descent in the real estate" claimed by plaintiff, it is equally a fact in the case that defendant, at the time of making this deed, "held no title of record to said property. His interests, if any, being one of expectancy through his grandfather or his father." The deed itself is not incorporated in the agreed statement of facts. Just what its exact language is cannot be told, but in view of the facts stipulated, as established in the case, we cannot disregard, in construing the deed's effect, the fact that the defend-

ant, at the time he made the deed, had no title to the property—his only interests being those of expectancy through his grandfather or his father. At the time the deed was delivered, then, it necessarily could not and did not convey anything at all to Perry. Its operative force, if it had any at all, was simply to constitute between the parties a contract to convey the interest defendant might acquire in the land by descent or purchase. In Merriam v. United States, 107 U. S. 441, 2 Sup. Ct. 540, 27 L. Ed. 531, it is said:

"It is a fundamental rule that in the construction of contracts the courts may look, not only to the language employed, but to the subject-matter and the surrounding circumstances, and may avail themselves of the same light which the parties possessed when the contract was made. Nash v. Towne, 5 Wall., 689 (72 U. S. XVII., 527) ; Barreda v. Silsbee, 21 How., 161 (62 U. S. XVI., 91) ; Shore v. Wilson, 9 Cl. & F., 555; McDonald v. Longbottom, 1 El. & El., 977; Munford v. Gething, 29 L. J., C. P., 110; Carr v. Mantefore, 5 B. & S., 408; Brawley v. U. S., 96 U. S., 168 (XXIV., 662)."

See also 18 C. J. p. 280, Sec. 248, and extended list of cases cited.

Bearing in mind that it is a conceded fact in this case that at the time the quit claim deed was made and delivered the only source from which the defendant could get a title to the land in controversy was from his father or grandfather, it seems perfectly clear that any interest defendant acquired after he gave his quit claim deed, which should come to him through descent and which he was obligated to convey, if it did come to him, would be through his grandfather or his father. In other words, the agreed statement of facts would seem to limit the source of his title by descent, if obtained and which was thereafter to be conveyed, to that coming from father or grandfather. We think the same limitation is to be

applied to the words "by purchase." In brief, the title which he might obtain and which he was obligated to convey to plaintiff, was a title which he might thereafter secure through the operation of the law of descent from his father or grandfather, or by purchase from them and them only. Under the stipulated facts, it is impossible, as we view it, to conclude that the parties intended the after-acquired title which defendant agreed should pass to plaintiff, should come from another source entirely—a source which at the time defendant made his deed had absolutely no connection with the title to the property in controversy, and which the parties never at that time had in mind at all. See Stoepler v. Silberberg, 220 Mo. 258, 119 S. W. 418.

The agreed facts submitted to the trial court are meager in the extreme. What our conclusion would be if the case was before us upon evidence showing in full the entire transaction, it is impossible to say. Our views upon the record as it now exists are as indicated above. Believing that the District Court committed no error in entering the judgment it did, the judgment should be and hereby is affirmed.

*Affirmed.*

BLUME, C. J., and KIMBALL, J., concur.